Good morning. May it please the court. Mark Halpern for the Doe Run Resources Corporation. We brought this new defense coverage action against St. Paul because Doe Run was named in various new lawsuits alleging new causes of action and a slew of new allegations that under the duty to defend potential for a new provision in the policy that was not previously at issue. Now the district court based its decision on collateral estoppel but where I'd like to actually start if you may permit me is with the issue of whether this is actually a new claim in these new cases because I feel like that permeates everything the whole look at the original complaints that were at issue and compare them to the new cases that were brought against Doe Run. The original example we gave is in the joint appendix at 780 to 810 and there the theory that plaintiffs are bringing is one of alter ego. This is a site in Peru, a smelting and mining site in Peru that Doe Run does not have a direct ownership of and there was a former subsidiary that operated and owned the facility for a number of years and so in their original complaints plaintiffs are trying to figure out a way to tie Doe Run to this facility in order to bring liability for these Peruvian residents in the United States against Doe Run. They did not sue Doe Run in Peru. So if you look at the original complaints the theory, the whole crux of it is an alter ego theory. They're saying that Doe Run was effectively Doe Run Peru and they talk about for example in paragraph 26 of that complaint as owner of the La Roya metallurgical complex. That's the complex in Peru we're talking about that Doe Run is liable for the activities there and then it says at all Doe Run was an agent of defendants. So those that permeates the entire complaint that's the basis for for those allegations trying to tie the alleged injuries to Doe Run. We don't give any merit to these cases for what it's worth but that's their theory. Now a number of years in and after the prior coverage action had been resolved in the trial court the the same plaintiff's firm filed several new cases and all the recent cases have these new cause of action and new allegations and compared to the 30 page original complaint this is now a 70 page complaint that Doe Run is receiving and I'll point the court as an example. We give a few of them in the record to appendix 819 to 896 and in that complaint there's suddenly a new completely new theory of liability for Doe Run covering I think there's eight pages covering these alleged service agreements between Doe Run and Doe Run Peru where Doe Run allegedly was providing various project contracting work for Doe Run Peru and now plaintiffs are alleging in a new cause of action that Doe Run has liability as a result of having completed those projects on behalf of Doe Run Peru. Counsel let me ask you this so you actually identified in the language you're using which is at least when we're talking about federal jurisdiction I know that's a that's a different area we're talking about Missouri collateral estoppel and claim preclusion law but there's a difference between claims and theories. Theories are way of different ways of proving the same thing so I want thousand dollars of damages I have theory 1 I have theory 2. It seems like we don't have different claims here you're still suing or Doe Run still suing st. Paul for coverage that's the claim the claim is I want coverage the theory has changed based on what the plaintiffs have argued so the theory the first time around is alter ego the theory the second time around is the contractor why aren't those still the same claim at the in the end all we're asking is does st. Paul have to provide a duty to defend or you know a defense yeah I disagree your honor that those are the same claim because in the first instance we're seeking defense coverage for the allegations in the original complaint and the alter ego claim that Doe Run is effectively Doe Run Peru and that falls as determined in the prior case into the pollution exclusion now we're not seeking coverage for that anymore that was denied we're seeking coverage for the new claim which is that Doe Run has liability the new underlying claim that if Doe Run has liability as a contractor and that's a separate claim because we're seeking defense coverage for that cause of action those those specific claims but you're also seeking it for the original and I'm really focusing more on the original 23 I think which is does this lead to a rule in which you can Syria in a series of cases like every time the complaint is amended you can come back and ask for a completely new defense or should we cut it off at some point so we're not completely re-litigating the same thing and that's a very fair question and the answer is if the new amended complaint includes a new basis for coverage then yes you can go back that happens all the time and there's cases we cited to for that proposition and in fact you are supposed to tender a new amended complaint to the insurer if you don't you get in trouble you you can be out of luck there's the Inman case for example that's one of the ones that was cited by st. Paul in that case there was a change of new allegations and the judge ended up the court ended up denying coverage on other grounds but not on collateral stop or res judicata because they said no there's a new amended complaint with new issues that we need to address here so the answer is that yes we're entitled to coverage in a separate claim for that component of the complaint that's new I mean they could have dismissed out the old claims that added in the new claims and we would get coverage there and I don't think st. Paul really quibbles with that point because actually they admit in their opposition brief that we misunderstand the district court's ruling in that if there are new claims there are actually new claims then we do get coverage and or we get new coverage analysis and that's exactly what we're asking for here I want to go to one point your honor that you're raising which is distinguishing the new cases those five new cases with the new cause of action and the bolstered up allegations versus the pre-existing cases we asked for defense coverage for both our main target is the new cases but the reason we included the prior cases is because we don't want any complaint from st. Paul that we're hiding the ball on those what happened is after plaintiffs started filing these new cases with this entirely new theory of liability that falls into coverage they also produced an expert witness Shurman off I believe was the name that specifically testified your honor that for all of the there's an expert that was identified in all of the cases that Doran was involved in a series of projects as a contractor and identified a couple dozen and so it's our impression Doran's impression that plaintiffs counsel intends at some point to those same new claims into the pre-existing cases as well so we wanted to put st. Paul on notice for that and for that proposition we cited to the stark liquidation case which basically says look you don't need an amended complaint necessarily in order to have a new claim you can just be given notice by the plaintiffs so our view is that that expert report was noticed that there are these new claims now let me ask you this so you might be right as a because I think it's it's questionable particularly with regard to the new claims but I still wonder about claim preclusion with respect to the pre existing claims which is I wonder whether the four identities have not really been satisfied between you know you got the same parties you've got a sort of sort of the same you know go down the line and it seems like though for those pre-existing ones claim preclusion may apply and I want to hear your response to that yeah and look a possible outcome of this I don't think it's the correct outcome but a possible outcome is that we have res judicata with respect to the 23 cases that previously were litigated all the way through on defense coverage that haven't even been amended and then there's a fresh look at these new cases which have the new cause of action I recognize that's a possible result the reason I don't think that's entirely correct is because of the fundamental principle in defense coverage that we cited to with a cases like the easy core etc that if there is an amendment or change to the case both sides get a fresh shot at it st. Paul if we had one covered cause of action and then that cause of actions dismissed then st. Paul has the opportunity to say no we're withdrawing the defense because the one hook for defense coverage is no longer there even if we have won your honor declaratory relief judgment on that defense they're entitled to then sue us again and say it's now done so the same goes for us is that there may not be defense coverage in the first instance things change we get another shot at it I think the key procedural issue I've thought about this is you know at what point is every little change enough to file a new lawsuit I think the answer is if there isn't a material change that introduces a new issue and a new hook for coverage then st. Paul should win right out of the gate like they tried to in this case and we think the district court was in clear error but I think that is the that's the line that needs to be drawn I'll reserve the rest of my time for rebuttal you know that's a line that needs to be drawn I keep coming back at those the four things that you're supposed to figure out race judicata and I think the fighting point is the last one you know and that is that they arise out of the same operative nucleus same nucleus of operated fact and based on the same factual predicate and that what you're looking at is that's presented is a different issue right at some level that somehow changes the factual predicate on which the the coverage determination you is just balanced on the fulcrum is it following the side of that side right and so why is it that these new facts are such that they create a new factual predicate because it that's really the deal is there's a new fact alleged that somehow gives rise to a new basis for coverage right and I'll answer that that question directly which is the answer in this case is because we're talking about the duty to defend and so the duty to defend the relevant facts the most relevant facts are the policy which hasn't changed and what the actual allegations and claims are in the underlying case when those claims materially change the facts relevant to the duty to defend analysis change so there is a new issue and there's a new fact that there's a new claim being made I don't think there'd be any dispute if plaintiffs brought a new case all together like they actually did with respect to the five new cases that was standalone raising these new allegations and claims we would get defense coverage it shouldn't matter procedurally if that's just through an amendment to an existing case thank you all right this morning please the court and I will say I am pleased to be in a real court rather than a virtual courtroom in my kitchen I represent st. Paul fire and marine insurance company and I I was going you know my plan discussion was to start with collateral estoppel and then jump to into race judicata but I want to first address some of the council would you pull the microphone down towards you a little bit sure I want to first address some of the conversation that was had just now and I think a key point was was the notion of a claim is different than a theory and I think both collateral estoppel and race judicata to some extent embody that sort of that sort of issue is is a claim one and a theory another because I would posit that what's happened here is a new theory not a new claim and this is truly a situation where it's not form over substance just by calling something a new claim doesn't make it so and in that regard I would direct you you know there's been a comparison of the allegations of the first set of read complaints we call them in the second set of read complaints the first set of read complaints had a more skeletal description of Doe Run's involvement in the in the matter it said I'm reading from paragraph 34 of the exemplar complaint that was used the language is some are all of the corporate defendants pursuant to various written agreements including the various Doe Run partnership agreements as amended and restated expressly or impliedly assumed liabilities arising out of the operation of the La Arroya complex and related operations and facilities since October 24 1997 to say that the first set of complaints was strictly an alter ego theory I think is an overstatement I think what was what happened in the first set of complaints is that they were pled pretty broadly they were pled because there were a lot of interrelated parties all in one way or another you and it was pled broadly in that first round of complaints the second I want to I want to go back to your claim versus theory which is I think that works really well on claim preclusion on race judicata I think it works less well on collateral estoppel because if you read what Missouri said whether the issue decided in the prior I whether the issue decided in the prior adjudication was identical to the issue presented in the present action I think it it more goes to theory that at least at the claim preclusion I think the argument would be look the theory before maybe it was broad was more of an alter ego maybe owner owner operated at the plant and now we have a completely different theory contract you know contractor liability and I wonder whether that's enough to get past the collateral estoppel bar I think I think it is the collateral estoppel issue I think turns on what was the issue that was was estoppel was is their coverage here I would say the subissue that was litigated under collateral estoppel was does the pollution exclusion bar that coverage that's the subissue I think those that almost the same issues that were in that liberty mutual case that the Missouri Supreme Court decided by the way so I think those are the issues and you know this pollution exclusion is approximately three pages of a many many many page thick document which you more familiar with than you would like to be you know it's it's a very small amount so to say that okay now we're going to get even more grand jewel great grand jewel and say yeah but the subcontractor your work issue wasn't discussed well the pollution exclusion was and there was certainly in my view the opportunity to raise the contractor sort of argument in connection with the with the pollution exclusion at that time the whole pollution exclusion was in front of the court and the allegation that I just read to you from the first set of complaints that was before the court too and on the duty to defend what they're really doing is they're looking at the allegations of the underlying complaints and they're looking at the policy here's my problem with that argument wouldn't the argument of the insurer here been suppose that was raised the contractor liability exception then the argument I think would have been from the insurer and rightly so we're not you're not being sued as a contractor those those those allegations don't include that and so that's just irrelevant right and and that may be a winning argument now you may disagree but it could be and so I just wonder whether that's that's sort of a fair thing because we got to talk about equity when we're talking about collateral estoppel well I think that the contractor claim could have to the extent they brought this claim this coverage claim to us to be clear and said you know look there's this allegation in here and it's vague and it we were possibly the owner owner we were possibly the operator we were possibly doing these things pursuant to contracts with each other I think that's the short form of the broader description that that is contained in the Escobar complaint for example the second set of complaints and it's also I think important to remember that the same sort of what was referred to as alter ego which I think is an overstatement the same other types of vague dough runs involvement was operation it was you know this it was that those were in the second set of complaints to they just put a finer point on the contracts in the second set of complaints so I so I think it's subsumed within within the same you know claim claim for coverage that was presented if that answers your question I think though you know and that's that so that's if you look at Liberty Mutual that case I think that that is a very key case here because there is the same sort of you got to draw the line somewhere as to what what counts as what was litigated and there it was the same issue it was coverage in the first instance and it was the pollution exclusion in the second that's the same sort of situation that we have here if if that's not persuasive enough and I think that the district judge took that first because there is such a compelling Supreme Court of Missouri case that that lays out the analytical framework the whole thing they're just such close cases that I think that's why she didn't address race judicata but I actually think race judicata is the easier of the two and I you know I was myself a little bit surprised I think they both apply but I was surprised that we didn't get the ruling on race judicata off the bat first because that the key element there is it's the same operative facts it's the new facts developed if they had these contracts in 1997-98 up to I mean Mike our coverage was 2005 to 2007 these weren't brand new contracts that just sprouted up okay that that's not what the argument is here rather it's it's a it's the same facts existed the same people were getting pollute we're getting affected by the emissions from the facility it was the same facility it's the same all that notion of how you measure the same the facts and it's the same policy it's the same language I mean this is the same transaction what's new about the transaction I don't think anything changed unless you I guess unless you believe that these new allegations are so significantly different than the allegations of the first set of complaints but I don't think they are I think they're as I've said I think that the longer version of of the of the faxes they developed as these various cases had proceeded over time with respect to you know another thing I think that we need to be cognizant of in this analysis and a lot of the law that's relied upon here in the in the appellant's briefs are cases that stand for the notion that if if an insurer makes a decision on the duty to defend and then claim that things change dramatically they're entitled to seek another adjudication from the insurer on the duty to defend and obviously litigate that if they don't agree with it we do agree we do agree with that that idea that's a that's a that's not a point of disagreement and I think you know a huge amount of the briefs of appellant are devoted to proving to us that we would have to reconsider in the case of a new claim but what we're saying is there's not a new claim here there's there's more facts relating to these older claims that have already been adjudicated we don't have a duty to re-litigate and that's what collateral estoppel and race judicata both are intended to do to stop the notion of just re-litigating re-litigating re-litigating and to provide the parties a basis upon which they can rely on a court's ruling and that and that's what I think we're seeking to do here is to rely on the court's ruling and with that I thank you suppose there's a new claim though so but you know let's just suppose that there's not a claim about lead particulate now there's a claim about an entirely different pollutant or there's a claim about the machine blew up at the and I don't even know what don't run does the machine blew up and it hurts them a surrounding property would would then in your view would the would the would the boat would pretend ring be allowed or should do run have known that there were other damages that occurred arising out of its plant and therefore their race judica their race judicata to I think that's a pretty complicated hypothetical no disrespect because I think that it depends on the details of some of the variables you provided you know with respect to race judicata if the facts truly change if there was a different explosion down the it was going to happen based on the earlier ones like you know maybe that way those are connected factually but if it was truly a completely different time place event transaction kind of you know transaction that's the key right and the race judicata test lays out the various things of how you measure a transaction and I think it's things that all exist at the time these things had all existed at this at the time already the emissions were continuous over time they sued many insurers over many years over the same emissions we're not talking about a thing that's different in time different in place different in any of those measures of the transaction it's the same transaction if we take judge Strauss's hypothetical and we say okay it's a different place it's a different time and a machine pulled blew up and it put different pollutants down there then we don't have the same operative body of facts and so it's a it's a different beast it fails the four-pronged test right because it's a different operative body of facts right I think that could well be true yes but what you're saying here is that we have the same place we have the same outcome that we're complaining about we have the the same basic facts some of which were pled some of which were now which were unpled now that you just kind of added unpled facts to it you really haven't changed the operative body of facts because we're still dealing with the same place the same leak the same outcomes the same injuries and so that's the that's the distinction that you would draw exactly exactly spot-on and and in fact I mean think about the contracts here that they are relying on presumably as contractors okay they sign those contracts I mean it's sort of self-evident but they if anyone knew of those contracts it was dough run I mean how could that be new evidence okay that they're only surprised by it's a surprise and it's nothing new it's it's they've known it all along they knew they know their own relationship to the site but but nonetheless the new set of complaints still it it it makes claims of all types you know either owner alter ego contractor they're just covering the relationships between these various dough run related entities the plaintiffs are covering their bases because in the underlying complaints I think they they're pleading it in sort of in the alternative that these various parties somebody's the owner somebody is you know it's contracting somebody's but they don't know they don't know as an old plaintiff's lawyer I'll tell you sometimes you're pleading all the new alternatives in the hopes of hooking the insurance policy anyway humanly possible right okay I can't comment comment never done that work I can tell you I did anyhow all right and for those reasons I ask you to affirm the district court on either race to Dakota or collateral estoppel or both thank you thank you mr. Halpern you have two minutes thank you there's a few issues I'll quickly address the first one race to Dakota the council is just as st. Paul did with the district court is trying to confuse indemnity coverage which based on the actual facts determined in the conclusion of the underlying case or the actual facts versus defense coverage which is based on what's alleged the wrong gives no merit to any of these cases they don't give merit to the alter ego theory they don't give merit to this contract liability theory they're contesting these cases vigorously but the fact that's relevant is not some outside information of what may or may not exist in the real world the fact that's relevant for defense coverage is what's alleged by plaintiffs plaintiffs can allege the the moon is made of cheese and if your policy provides coverage for that realm of claims you get coverage right and so that's what's going on here is that plaintiffs originally pled one set of allegations and it's not dough runs business to say hey we we can think of some other facts that might be helpful for you to make new claims against us if we went to st. Paul saying here's the original complaint which only makes fleeting mention of an agreement I'll talk about that in a second in a different context in the alter ego context not as a contractor claim that was only brought in the later actions we had no notice of that it's a surprise new claim if we have brought that to st. Paul and said hey we have these contracts the plaintiffs don't know about these provide us coverage through this exception to the exclusion they would have laughed at us we've been laughed right out of court that's not the standard for defense coverage it has to be what's actually alleged and we could show that's the hook for for defense coverage two seconds on collateral stop all it has to have been actually litigated if you look at the Supreme Court decision it's clear that the exception never came up it's never said it's not even quoted in the portion of the policy that the Supreme Court says is relevant thank you all right thank you counsel we appreciate your arguments today and the case is submitted and the